So Ordered.

Signed this 17 day of September, 2018.

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re: Todd L. Payne & Shannon L. Payne

Case No. 12-61259
Chapter 13

Debtor(s).

## STIPULATION AND ORDER AUTHORIZING PARTIES TO ENTER INTO LOAN MODIFICATION AND DIRECTING TREATMENT OF MORTGAGE CLAIM

WHEREAS, the Debtor(s) are owners of property located at 500 Cty Hwy 113, Northville, NY 12134 ("Property") and Seterus, Inc. ("Creditor") is the holder of a note in the original amount of $146,500.00 ("Note") and mortgage ("Mortgage") against the Property securing the Note; and

WHEREAS, a Loss Mitigation Order granting Debtor(s)' Loss Mitigation Request was entered on 1/3/2018 ; and

WHEREAS, the Loss Mitigation Parties and their respective attorneys have negotiated in good faith and reached an agreement to modify the terms of the Note and Mortgage ("Loan Modification Agreement") and require court approval to enter into such modification.

NOW, IT IS HEREBY STIPULATED AND AGREED as follows:

{LM 10 Stip & Order Auth. Loan Mod rev. 01-04-2017}

1

1. The automatic stay imposed by 11 U.S.C. § 362(a) upon the filing of the Debtor(s)' petition is hereby modified solely for the purpose of allowing the Debtor(s) and Creditor to execute and record a Loan Modification Agreement; and

2. Debtor(s) and Creditor are hereby authorized to execute and record the Loan Modification Agreement annexed hereto as Exhibit A; and

3. Below is a comparison of the terms of the Note and Mortgage and Loan Modification Agreement:

| Current Terms | | Modified Terms | |
|---|---|---|---|
| Unpaid Principal Balance | $ 79,629.03 | Unpaid Principal Balance | $109,245.35 |
| | | Principal Amount Forgiven | $ 0.00 |
| Maturity Date | 06/03/2033 | Maturity Date | 08/01/2058 |
| | | Term of modification | 40 Years |
| Payment Due Date | 06/03/2003 | Payment Due Date | 09/01/18 |
| Monthly Payment | $1,452.62 | Monthly Payment | $1,092.08 |
| Principal and Interest | $1,028.55 | Principal and Interest | $582.15 |
| Escrow | $ 424.07 | Escrow | $ 509.93 |
| Interest Rate | 5.75% | Interest Rate | 5.75% |
| Other Salient Terms (*e.g.*, balloon payment) | | Other Salient Terms (*e.g.*, balloon payment) | none |
| | | Additional Amount Capitalized | $ 29,616.32 |

4. The secured claim for prepetition mortgage arrears filed by the Creditor as Claim No. - __7-1__ on the PACER Claim Register ("Claim") is deemed modified to reflect the amount paid by the Trustee as of the date of entry of this Order, with any and all balance due on said Claim reduced to zero ($0.00); and

(LM-10 Stip. & Order Auth. Loan Mod. rev. 01-04-2017)

5. The Trustee is hereby directed to *[please check appropriate box below]*:

   ☑ Cease all further payments to Creditor on the Claim and on any and all Notices of Postpetition Fees and Costs filed in connection with the Claim in this case.

   ☐ Make the ongoing post-petition mortgage payment to Creditor as set forth in Debtor(s)' chapter 13 plan.

Dated: August 27, 2018                              _____, Esq.

Jason A. Brott, Esq.
(Print Name) Attorney for Debtor(s)

Dated: 9/7/18                           S/Stephani A. Schendlinger, Esq.

Stephani A. Schendlinger
(Print Name) Attorney for Creditor

Dated: 8/27/18

Mark W. Swimelar
Standing Chapter 13 Trustee

###

After Recording, Return To:

_____
_____
_____
_____

———————————————— [Space Above This Line For Recording Data] ————————————————

**Collateral Address:** * 500 COUNTY HIGHWAY 113, NORTHVILLE NY 12134-3752

**Loan Number:**        , Prepared by Servicer: Seterus, Inc., NMLS ID Number: 787641, Investor Loan Number:

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 27th day of July, 2018, between PAYNE, TODD ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated June 03, 2003, and the Original unpaid principal balance: $146,500.00, and the Pre-Modification Principal Balance: $79,629.03, and recorded in Book or Liber 1423, at page(s) 147, Instrument Number N/A, of the County Records of Fulton and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
 * 500 COUNTY HIGHWAY 113, NORTHVILLE NY 12134-3752,
the real property described being set forth as follows:
 Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of September 01, 2018, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $109,245.35, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.750%, from August 01, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $582.15, beginning on the 1st day of September, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.750% will remain in effect until principal and interest are paid in full. If on August 01, 2058 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

PAYNE, TODD
LOAN MODIFICATION AGREEMENT            L790AQ.1                            Page 1 of 8

20180810

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $509.93 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing September 01, 2018.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide

receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:
    (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By

executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:
   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.
   (f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

8. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

9. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

11. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

Seterus, Inc

AUG 1 4 2018

_____  Keith Hogan     Authorized Signer
Seterus, Inc. Authorized Signer                     Date

_____                   8/8/18
PAYNE, TODD                                         Date

_____ [Space Below This Line For Acknowledgments] _____

State of NEW YORK         )
                          ) ss.:
County of Fulton          )

On the 8th day of August, in the year 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared PAYNE, TODD, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JASON A. BROTT
Notary Public, State of New York
Appointed in Fulton County      (Signature and office of person taking acknowledgment)
(Seal, if any) Reg. # 02BR5075887
My Commission Expires April 7, 2019
My Commission Expires: 4-7-19

PAYNE, TODD
LOAN MODIFICATION AGREEMENT          L790AQ.1                    Page 6 of 8

State OREGON ss. :

On the _____ day of _____ in the year _____, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of WASHINGTON in the State of OREGON.

_____
(signature of individual taking acknowledgment)
Printed Name:

(Seal, if any)

_____
(office of individual taking acknowledgment)

My Commission expires: _____

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND, SITUATE IN THE TOWN OF NORTHAMPTON, COUNTY OF FULTON AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:  BEGINNING AT A SET IRON PIN ON THE EASTERLY LINE OF COUNTY ROAD 113 (RIDGE ROAD) WHERE SAID EASTERLY LINE IS INTERSECTED BY THE COMMON BOUNDARY LINE OF THE LANDS OF BARBER, HEREIN DESCRIBED, ON THE SOUTH, AND THE LANDS OF RAYMOND AND MARY W. BENTON, ON THE NORTH IRON PIN FURTHER DESCRIBED AS BEING 460 FEET DISTANCE SOUTHEASTERLY, ON A STRAIGHT LINE, FROM THE INTERSECTION OF THE CENTERLINE AT COUNTY ROAD 113 WITH THE CENTERLINE OF TENNANTVILLE ROAD, AND RUNNING THENCE FROM THE PLACE OF BEGINNING N. 65 DEGREE 43' E. AND ALONG SAID BARBER-BENTON COMMON BOUNDARY LINE AS PARTIALLY MARKED BY A HEDGEROW A DISTANCE OF 182.18 FEET TO A SET IRON PIN: THENCE RUNNING THROUGH THE LANDS OF BARBER THE FOLLOWING TWO (2) COURSES: S. 24 DEGREE 16' 30" e, 165.63 FEET DISTANCE TO A SET IRON PIN; THENCE S. 65 DEGREE 25' 40" W., 185.02 FEET DISTANCE TO A SET IRON PIN; THENCE N. 23 DEGREE 18' 00" W. AND RUNNING ALONG THE AFORESAID EASTERLY LINE OF COUNTY ROAD NO. 113 A DISTANCE OF 166.58 FEET TO THE PLACE OF BEGINNING.